IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| THE HANOVER INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff-Counterclaim Defendant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| TMP INTERNATIONAL, INC.; TODD McFARLANE PRODUCTIONS, INC.; and, TODD McFARLANE; | ) ) ) | Case No. 4:04CV00668-DDN |
| | ) | <u>Jury Trial Demanded</u> |
| Defendants-Counterclaimants, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| TONY TWIST, | ) | |
| | ) | |
| Defendant. | ) | |

**ANSWER AND COUNTERCLAIMS OF TMP INTERNATIONAL, INC.
TODD McFARLANE PRODUCTIONS, INC., AND TODD MCFARLANE**

Defendants TMP International, Inc. ("TMP International"), Todd McFarlane Productions, Inc. ("TM Productions"), and Todd McFarlane (together, the "McFarlane Defendants") hereby submit their Answer and Counterclaims:

**ANSWER**

1.      The McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint.

2.      Admit.

3.      Admit.

4.      Admit.

5.      The McFarlane Defendants admit Todd McFarlane is an individual who, under 28 U.S.C § 1332, is a citizen of the State of Arizona because he is an alien admitted to the United

States for permanent residence and is domiciled in the State of Arizona. The McFarlane Defendants further answer that Todd McFarlane is a citizen of Canada and admit the remaining allegations in paragraph 5 of Plaintiff's Complaint for Declaratory Judgment.

6. Paragraph 6 of the Complaint alleges legal conclusions requiring no answer.

7. Because the McFarlane Defendants are without knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 1 of the Complaint, they are without knowledge or information sufficient to form a belief as to the truth of the allegations regarding diversity of citizenship. They admit that the amount in controversy exceeds $75,000, exclusive of interest and costs.

8. The McFarlane Defendants deny this action relates to insurance coverage for a lawsuit pending in the Circuit Court of St. Louis County, Missouri. They further answer that the lawsuit for which coverage must be provided is pending in the Circuit Court for the City of St. Louis, Missouri. The McFarlane Defendants also deny that the claim for coverage arose in this District. Nevertheless, they admit this action may be brought in this District.

9. The McFarlane Defendants deny that the Policy was renewed until May 1, 1998. They further answer that the Policy was renewed and extended through June 1, 1998. Except as expressly denied herein, the McFarlane Defendants admit the remaining allegations in paragraph 9 of Plaintiff's Complaint for Declaratory Judgment.

10. Admit.

11. Admit that McFarlane is an insured under the Policy with respect to his duties as an executive officer or director of TM Productions and TMP International but deny that his status as an insured under the Policy is limited to those duties.

12. The McFarlane Defendants deny the allegations in paragraph 12 of the Complaint on the ground that the Policy is the best evidence of its contents, including the types of coverage it provides to these parties.

13. The McFarlane Defendants admit that Hanover has accurately quoted isolated passages and excerpts from the Policy, affirmatively states that Hanover has failed to quote other relevant portions of the Policy, and denies the remaining allegations in paragraph 13 of the Complaint.

14. Admit.

15. The McFarlane Defendants admit that the claims for defamation and civil conspiracy have been dismissed, affirmatively state that Mr. Twist takes the position that the claim for injunctive relief has not been dismissed and therefore continues to pursue that claim, affirmatively state that Mr. Twist has continued to seek defamation-type damages after dismissal of that claim, and deny the remaining allegations in paragraph 15 of the Complaint.

16. The McFarlane Defendants deny the allegations in paragraph 16 of the Complaint on the ground that the various amended petitions, interrogatory answers, deposition testimony, document productions, and trial testimony in the Underlying Lawsuit are the best evidence of Mr. Twist's allegations against the McFarlane Defendants.

17. Admit; provided, however, that to the extent Hanover means to suggest that the only allegations against the McFarlane Defendants in the Underlying Lawsuit were the improper use of Mr. Twist's "name and likeness for a character in the *Spawn* comic book series, and related products," the McFarlane Defendants deny the allegations in paragraph 17 of the Complaint.

18. The McFarlane Defendants deny the allegations in paragraph 18 of the Complaint except that they admit that in 1993 Image Comics, Inc., published a *Spawn* comic book, Issue 15, in which the Antonio Twistelli character was first referred to by the nickname "Tony Twist."

19. The McFarlane Defendants admit that TMP International markets and sells action figures based upon certain characters from the *Spawn* comic book series published by Image Comics, Inc., affirmatively state that TMP International occasionally packaged a *Spawn* toy with a special promotional *Spawn* comic book, and that beginning in 1994 and continuing through 1997 TMP International sold two such toys in packages containing *Spawn* comic books that included the name Tony Twist, and deny the remaining allegations in paragraph 17 of the Complaint.

20. The McFarlane Defendants admit they tendered the Underlying Lawsuit to Hanover, deny that Hanover has fully reserved its rights to deny coverage of all claims asserted in the Underlying Lawsuit, deny that Hanover at any time during the seven-year pendancy of the Underlying Lawsuit prior to the filing of this lawsuit on the eve of trial of the Underlying Lawsuit ever denied that it had a duty to defend and indemnify the McFarlane Defendants. Except as expressly admitted herein, the McFarlane Defendants deny the remaining allegations in paragraph 20 of Plaintiff's Complaint for Declaratory Judgment.

## Count I

21. The McFarlane Defendants restate and incorporate by reference their answers to paragraphs 1 through 20 of the Complaint.

22. Deny.

23. Admit.

## Count II

24. The McFarlane Defendants restate and incorporate by reference their answers to paragraphs 1 through 23 of the Complaint.

25. Deny.

26. Admit.

27. The McFarlane Defendants deny each and every allegation of the Complaint not expressly admitted herein.

## Prayer

The McFarlane Defendants deny that Hanover is entitled to any relief in this action and respectfully request this Court order Hanover to pay the McFarlane Defendants' attorneys' fees and costs to defend this action in which Hanover seeks to avoid its contractual obligations, and for such other and further relief as this Court deems just and proper under the circumstances of this case.

## AFFIRMATIVE DEFENSES

A. Hanover's claims fail to state a claim upon which relief can be granted.

B. Hanover's claims are barred by the doctrines of waiver, estoppel and laches in that Hanover waited seven years — including a trial on the merits, an appeal to the Missouri Court of Appeals, an appeal to the Missouri Supreme Court, a remand for a new trial, and extensive discovery in preparation for the second trial on the merits — before concocting a pretext for trying to avoid its contractual obligations.

C. Hanover's claims are barred by its breach of its contractual duties of good faith and fair dealing.

D. Hanover's claims are barred by its bad faith and vexatious misconduct.

E.   Hanover's claims are barred by its own failure to perform its obligations under the Policy.

## COUNTERCLAIMS

Having answered the Complaint and asserted various affirmative defenses, the McFarlane Defendants allege as follows:

### Parties and Jurisdiction

1.   TM Productions is an Arizona corporation with its principal place of business in Arizona. TM Productions is in the business of creating comic book materials for publication by others and of licensing the creation of derivative works based on those comic books. During the events giving rise to this lawsuit, the publishers of TM Productions creations were Malibu Comics (for issues 1 through 10 of *Spawn*) and Image Comics, Inc. (for all other issues of comic books created by TM Productions).

2.   TMP International is a Michigan corporation with a principal place of business in Arizona. The principal business of TMP International is the manufacture and distribution of toy action figures. During the events giving rise to this lawsuit, TMP International also distributed and/or licensed for distribution apparel, trading cards and other products based on the *Spawn* comic book series.

3.   Mr. McFarlane is a citizen of Canada and a resident of the state of Arizona. He is an executive officer, director and shareholder of TM Productions and TMP International.

4.   On information and belief, Hanover is a New Hampshire corporation with its principal place of business in Massachusetts.

5.   This Court has jurisdiction over the subject matter of this counterclaim under 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in

controversy exceeds $75,000, exclusive of interest and costs. This Court has jurisdiction over the request for declaratory judgment under 28 U.S.C. § 2201.

**The Insurance Policy**

6. On or about May 1, 1995, and for adequate consideration, Hanover issued a commercial general liability policy to TMP International. The policy was effective beginning May 1, 1995 until May 1, 1996, and it was renewed and extended for over two years until June 1, 1998. The policy number was ZHH 4312739 (the "Policy").

7. TM Productions and Mr. McFarlane are also insureds under the Policy.

8. Coverage B of the Policy covers "personal injury" and "advertising injury" — both of which are defined in Section V of the Policy.

9. Under the Insuring Agreement in Coverage B, Hanover agrees to defend its insureds, to pay any judgement falling within Coverage B, and to settle any claim it decides to settle. Specifically, Hanover agrees to do the following:

> "a. We will pay those sums that the insured becomes legally obligated to pay as damages because of 'personal injury' or 'advertising injury' to which this insurance applies. We will have the right and duty to defend any 'suit' seeking those damages. We may at our discretion investigate any 'occurrence' or offense and settle any claim or 'suit' that may result."

**The Underlying Lawsuit and Hanover's Response**

10. In October of 1997, Tony Twist filed a multi-count petition in Cause No. 972-9415 in the Circuit Court of the City of St. Louis against the McFarlane Defendants and various other entities alleging a variety of claims, including libel, infringement of his right of publicity and unjust enrichment arising out of the alleged use of his name, likeness, identity, autograph and persona in, among other things, comic books, trading cards, an HBO animated television

series, an interview given by Mr. McFarlane (in his capacity as an executive of TM Productions and TMP International) to a third-party publication known as *Wizard Magazine* (the "Underlying Lawsuit"). A true and accurate copy of the original Petition, the Amended Petition, the Second Amended Petition, the Amendment by Interlineation to the Second Amended Petition, the Second Amendment by Interlineation to the Second Amended Petition, the Third Amendment by Interlineation to the Second Amended Petition, and the Fourth Amendment by Interlineation to the Second Amended Petition filed in the Underlying Lawsuit are included as Exhibits A, B, C, D, E, F, and G, respectively, in the Appendix to this Answer and Counterclaims (the "Appendix").

11. The allegations and claims asserted against the McFarlane Defendants in the original Petition (and in the Amended Petition and subsequent amendments) fall within Coverage B of the Policy in that:

    a. At least five of the claims alleged — namely, libel, violation of right of publicity (which is a privacy tort), unjust enrichment, civil conspiracy, and injunctive relief — fall within the definition of "advertising injury" and "personal injury," both of which expressly include "oral or written publication of material that slanders or libels a person" or "violates a person's right of privacy." (Policy, Section V, ¶¶ 1 and 13.)

    b. The alleged claims arose out of oral and written publication of material that occurred during the Policy period, including, without limitation:

        i. the creation of comic books, published by Image Comics during the policy period, that used the name Tony Twist, including various issues of *Spawn*, *Curse of Spawn*, and *Violator*;

        ii. the creation of the *Spawn Bible*, published in 1996 by Image Comics, which included a feature on the Tony Twist character,

        iii.    the distribution by TMP International of copies of the *Spawn Bible* (which includes a feature on the Tony Twist character) at a promotional event at a Junior A hockey arena in the fall of 1996,

        iv.    the distribution of *Spawn* trading cards that included the name Tony Twist,

        v.    the licensing of the first season of the HBO animated series, *Todd McFarlane's Spawn*, which HBO broadcast during the policy period and which included appearances by the Tony Twist character,

        vi.    the participation in an interview with a reporter from *Wizard Magazine* in which Mr. McFarlane allegedly stated that the Tony Twist character was based upon the plaintiff,

        vii.    the creation and maintenance of a *Spawn* Internet website containing the name Tony Twist.

    c.    The alleged claims did not fall within any relevant exclusion in that:

        i.    the alleged wrongdoing included oral and written publication of material whose first publication took place during the Policy period (Section I, ¶ 2, Exclusion (a)(2)); and

        ii.    neither TM Productions nor TMP International is in the business of advertising, broadcasting, publishing or telecasting. (Section I, ¶ 2, Exclusion (b)(4))

12.    The McFarlane Defendants were served with the Underlying Lawsuit in February of 1998.

13.    They timely notified Hanover of the Underlying Lawsuit and tendered their defense to Hanover.

14.    On April 6, 1998, Carolyn C. Coffman, Claims Specialist for Hanover, sent a letter to the McFarlane Defendants (the "Coverage Letter"). As stated in the opening paragraph of that Letter (a true copy of which is included as Exhibit H in the Appendix), the purpose of the Coverage Letter was "to provide [the McFarlane Defendants] with Hanover's position concerning coverage for the subject litigation."

15.     Although Hanover's Coverage Letter fails to address the right of publicity claim, it expressly recognizes that the claims for defamation, unjust enrichment and civil conspiracy included allegations that fell within the Policy coverage. Specifically, the Letter states (emphasis added):

> "Due to the potential coverage and since Hanover's duty to defend is broader than its duty to indemnify, **we will provide a defense for the entire lawsuit.** As stated above, we may not necessarily indemnify for all Counts of the Complaint."

16.     Despite Hanover's acknowledgement of its duty to defend and despite its statement that "we will provide a defense for the entire lawsuit," Hanover failed to defend the McFarlane Defendants and failed to "provide a defense for the entire lawsuit."

17.     Between the date of Hanover's Coverage Letter, in which it stated that it would "provide a defense for the entire lawsuit," and May 24, 2004, the following significant events occurred in the Underlying Lawsuit:

    a.     <u>July 1998</u>: Plaintiff files Second Amended Petition.

    b.     <u>March 1999</u>: Trial court dismisses defamation and civil conspiracy claims.

    c.     <u>July 2000</u>: Case goes to trial on right of publicity claims. Three-week jury trial ends in $24.5 million verdict against the McFarlane Defendants.

    d.     <u>October 2000</u>: Trial court grants post-trial motions of McFarlane Defendants and enters judgment notwithstanding the verdict in their favor.

    e.     <u>July 2002</u>: Missouri Court of Appeals affirms trial court's grant of judgment notwithstanding the verdict.

    f.     <u>July 2003</u>. Missouri Supreme Court reverses the trial court and remands for a new trial.

      g.     <u>December 2003</u>. Trial date set for June of 2004. Discovery commences.

      h.     <u>January 2004</u>. United States Supreme Court denies Petition for Writ of Certiorari.

      h.     <u>May 2004</u>. In response to request from counsel for McFarlane Defendants, Hanover agrees that they should contact the plaintiff's counsel to discuss settlement, including mediation. Plaintiff's counsel proposes mediation. On May 13, 2004, Hanover's representative sends the undersigned counsel an email stating, in pertinent part, "I am interested in mediation and would be willing to attend." Over the next several days, counsel for the McFarlane Defendants requests Hanover for additional information regarding settlement issues, but Hanover fails to provide a meaningful response.

18. At no time during the six years after its Coverage Letter and before May 24, 2004, did Hanover supplement or amend its Coverage Letter or otherwise notify its insured of any change in its coverage position.

### Hanover's Eleventh-Hour Attempt to Repudiate Coverage

19. On May 24, 2004—more than six years after agreeing to provide a defense to its insureds, almost four years after the first trial of the Underlying Lawsuit, eleven days after stating its willingness to attend a settlement mediation, and just two weeks before the first day of the second trial—Hanover sent a letter to the McFarlane Defendants notifying them that "there is no coverage for indemnity or for defense for any of the claims asserted in the current lawsuit against any of the insureds identified in the Hanover insurance policies." A true copy of this letter (the "Repudiation Letter") is included in the Appendix as Exhibit I.

20. As stated in the Repudiation Letter, Hanover based its coverage "analysis" "on the Second Amended Petition, as amended by subsequent interlineations." As noted above, that Second Amended Petition was filed in July of 1998—almost six years prior to the Repudiation Letter.

## COUNT I

## BREACH OF CONTRACT

21. The McFarlane Defendants reallege and incorporate the preceding paragraphs of their Counterclaim as the first paragraph of this Count.

22. The Policy is a valid and binding contract between Hanover and the McFarlane Defendants.

23. The McFarlane Defendants have fully performed all of their contractual duties and obligations under the Policy.

24. Hanover has failed and refused to perform its contractual duties and obligations under the Policy, and in doing so has breached that contract.

25. As a direct and proximate result of Hanover's breach of its contractual obligations under the Policy, the McFarlane Defendants have been damaged in that, among other things, they have been forced to defend themselves at great and ongoing expense in the Underlying Litigation, they have been unable to enter into meaningful settlement negotiations with the plaintiff in the Underlying Litigation, they have been exposed to crippling liability in the Underlying Litigation as a result of Hanover's malfeasance, and they have been forced to defend themselves in this lawsuit and thereby incur additional legal fees and expenses.

## COUNT II

### Promissory Estoppel

26. The McFarlane Defendants reallege and incorporate the preceding paragraphs of their Counterclaim as the first paragraph of this Count.

27. Hanover's made representations to the McFarlane Defendants regarding its acceptance of the defense of the Underlying Action.

28. The McFarlane Defendants reasonably relied on those representations that caused the McFarlane Defendants to engage in certain acts and omissions to their detriment.

29. As a direct result, the McFarlane Defendants have suffered damages.

## COUNT III

### Bad Faith

30. The McFarlane Defendants reallege and incorporate the preceding paragraphs of their Counterclaim as the first paragraph of this Count.

31. Hanover's acts and omissions since it received notice in early 1998 of the claims against its insureds in the Underlying Lawsuit have demonstrated bad faith and have been willful, vexatious and without reasonable cause or excuse in that, among other things:

   a. Hanover represented to the McFarlane Defendants in its Coverage Letter of April 6, 1998, that it would "provide a defense for the entire lawsuit," but thereafter failed and refused to do so;

   b. To the extent Hanover reimbursed any of the McFarlane Defendants' defense costs, it did so only intermittently and pursuant to an arbitrary, unilateral and unreasonable allocation formula and at an arbitrary, unilateral and unreasonable hourly rate structure;

c. Hanover failed to conduct any meaningful investigation into the facts and circumstances of the Underlying Lawsuit at any time after the date of its Coverage Letter and before its Repudiation Letter;

d. Hanover failed to respond in a timely and responsible manner to settlement overtures from the plaintiff;

e. On the eve of trial and six years after the filing of the pleading in the underlying lawsuit on which it purported to rely, Hanover denied coverage on specious grounds having no relation to the actual facts and pleadings in the case during the six years since issuance of its Coverage Letter;

f. Hanover misrepresented pertinent insurance policy provisions relating to the coverage at issue;

g. Hanover failed to acknowledge and act reasonably and promptly upon communications with respect to claims arising under the Policy;

h. Hanover failed to make reasonable and prompt investigation of claims arising under the Policy;

i. Hanover refused to pay claims without conducting a reasonable investigation based upon all available information;

j. Hanover failed to affirm or deny coverage of claims within a reasonable time after defense was tendered;

k. Hanover did not attempt in good faith to effectuate prompt, fair and equitable settlements of claims or otherwise participate in settlement discussions.

  l.  Hanover failed to promptly provide a reasonable explanation of the basis in the insurance policy relative to the facts or applicable law for denial of a claim.

32. As a direct and proximate result of Hanover's bad faith and willful, vexatious and unreasonable conduct, the McFarlane Defendants have suffered damage.

WHEREFORE, the McFarlane Defendants pray for the following relief:

A. A declaration setting forth their rights and Hanover's ongoing obligations under the Policy;

B. An award of all defense costs incurred by them in the Underlying Action and any such other compensatory damages to be determined at trial;

C. An award of interest;

C. An award of punitive damages;

D. An award of their costs and reasonable attorneys' fees expended in this action; and

E. Such other and further relief as the Court deems just.

## JURY DEMAND

The McFarlane Defendants demand a trial by jury of all issues triable as of right to a jury.

Respectfully submitted,

/s/ Michael A. Kahn
Michael A. Kahn #3506
Geoffrey G. Gerber #94478
BLACKWELL SANDERS PEPER MARTIN, LLP
720 Olive, Suite 2400
Saint Louis, MO 63101
Tel: 314-345-6000
Fax: 314-345-6060

Attorneys for Todd McFarlane Productions, Inc., TMP International, Inc. and Todd McFarlane

STLD01-1087130-1  15

## CERTIFICATE OF SERVICE

  The undersigned hereby certifies that on this 20th day of July 2004, the foregoing Answer and Counterclaims of TMP International, Inc.; Todd McFarlane Productions, Inc.; and Todd McFarlane was served by operation of the Court's electronic filing system and/or first-class U.S. mail, postage prepaid upon the following:

    Russell F. Watters
    Steven H. Schwartz
    Brown & James, P.C.
    1010 Market Street, 20th Floor
    St. Louis, MO 63101

    Robert D. Blitz
    Blitz, Bardgett & Deutsch, L.C.
    120 South Central Ave., Suite 1650
    St. Louis, MO 63105


    /s/ Michael A. Kahn
    Michael A. Kahn #3506
    Geoffrey G. Gerber #94478
    BLACKWELL SANDERS PEPER MARTIN, LLP
    720 Olive, Suite 2400
    Saint Louis, MO 63101
    Tel: 314-345-6000
    Fax: 314-345-6060

    Attorneys for Todd McFarlane Productions, Inc.,
    TMP International, Inc. and Todd McFarlane